**IN UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

|  |  |
|---|---|
| KAREN CARR<br>8333 Daydream Crescent<br>Pasadena, Maryland 21122<br><br>    *Plaintiff*,<br><br>    vs.<br><br>DISTRICT OF COLUMBIA<br>MURIEL BOWSER, MAYOR<br>1350 Pennsylvania Avenue, NW<br>Washington, DC 20001<br><br>Serve:  DC Attorney General<br>       Carl Racine, or his designed<br>       Representative<br>       441 – 4ᵗʰ Street, N.W.<br>       Washington, DC 20001<br><br>    *Defendant*. | Civil Action No.<br><br>**Jury Demanded** |

**COMPLAINT**

      **COMES NOW**, the Plaintiff Karen Carr, by and through undersigned counsel, with her COMPLAINT against Defendant the District of Columbia (hereinafter "DC" or "Defendant") for the causes of action stated below:

**PARTIES**

1.     Plaintiff Karen Carr ("Plaintiff" or "Ms. Carr") is an employee of the District of Columbia Metropolitan Police Department (hereinafter "MPD").  She began her employment with MPD in for twenty-three (23) years, having been hired as a trainee officer in April of 1998.  She is a resident of the State of Maryland.

1

2.      Defendant District of Columbia is a municipality governed by Mayor Muriel Bowser and the City Counsel of the District of Columbia.

3.      The DC Metropolitan Police Department is a law enforcement agency and department of the District of Columbia Government.

## JURISDICTION

4.      This Honorable Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1331 as it asserts claims that arise under the Constitution, laws, or treaties of the United States, specifically Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e, *et seq.,* ('Title VII"), District of Columbia Human Rights Act, District of Columbia Code § 2-1401.01 *et seq.*, The Civil Rights Act of 1866, 42 U.S.C. § 1981(a), 42 U.S.C. 1981 by way and through 42 U.S.C. § 1983, and the District of Columbia Whistleblower Protection Act, District of Columbia Code § 1-615-51, *et seq.*

## VENUE

5.      Venue is proper in the District of Columbia under 28 U.S.C. § 1331 and 29 U.S.C. § 1402 substantially all the acts and omissions that give rise to this complaint occurred in the District of Columbia.  Further, this Court has jurisdiction over this Complaint because there is diversity of the parties, and a question of federal law is presented.  28 U.S.C. §§ 1331 (federal question) and 1332 (diversity).  Venue properly lies within this Court pursuant to 28 U.S.C. § 1391 and 42 U.S.C. § 2000e-5(f)(3).  There are also pendant state law claims that this Court has authority to adjudicate.

## EXHAUSTION OF REMEDIES

6.     Plaintiff has exhausted all administrative remedies.

7.     On or about May 2, 2021, Plaintiff timely filed a formal Charge of Discrimination with the U.S. Equal Employment Opportunity Commission ("EEOC") for discrimination based on race (African American), sex (female), disability and retaliation for prior and ongoing EEO activity, her claims being based on disparate treatment and the creation of a hostile work environment.

8.     On May 5, 2021, the EEOC issued a Dismissal and Notice of Right to Sue, giving Plaintiff ninety (90) days to file a civil action.

9.     Plaintiff now timely files this action pursuant to federal law.

## RELEVANT FACTS COMMON TO ALL CLAIMS

### INITIAL EMPLOYMENT WITH MPD

11.     Plaintiff began her employment with MPD in April of 1998.  She was hired as an officer and was a member of the union, Fraternal Order of Police, Lodge # 1 (hereinafter "FOP" or "Union").

12.     Plaintiff was one of only three (3) Black female officers in her class of predominately white men, and one Black man.

13.     Despite the imbalance of her class, and a pattern of sexist and racist comments, and acts of favoritism shown the White male trainees, Plaintiff was selected to be a squad leader for a portion of the training.

14.     After her time at the police academy, Plaintiff was assigned to the Sixth District Police Station.

<u>DISPARATE TREATMENT THAT CAUSED PLAITNIFF
TO RESIGN FROM THE ARMY RESERVES</u>

15.     At the time of her initial training and during her first MPD assignment, Plaintiff was a United States Army National Guard soldier.  Plaintiff's Army specialty was as a vehicle repair specialist.

16.     As such, she was required to drive to Ft. Pickett, Virginia one weekend per month to fulfill her reserve duties and obligations.

17.     Plaintiff had completed four (4) years of active-duty services in the United States Army before joining the MPD, and it was her desire and intention to serve in the reserve component for a full twenty (20) year career, and to earn a full reservist retirement with all benefits related thereto.

18.     Despite the fact that her service in the Army Reserve was protected by Federal Law, the Sixth District leadership refused to work with her to fulfill her obligation, forcing her to remain on duty late on Fridays when she had reserve drill, thus incumbering her ability to reach Ft. Pickett on time.

19.     Furthermore, even though Plaintiff had leave to complete her two-weeks-per-year reserve obligation, and the fact that such service is protected by law, the Commander of the 6th District to made it very challenging to get the time off that she needed.

20.     The obstacles and push-back Plaintiff received from her superiors when it came to fulfilling her reserve duty became so stressful, that she ultimately had to resign from the Army Reserve, and relinquish and abandon the time-in-service equity she had built towards a full 20-year reservist retirement.

21.     At the time, several male MPD officers were also military reservists, and were given both the time off, and all reasonable accommodation needed to fulfill their reserve without difficulty.

22.     When Plaintiff complained to her leadership about the disparity in treatment, her concerns were ignored.

23.     This was the first serious circumstance in Plaintiff's career at MPD when her management subjected Plaintiff to unequal and disparate terms and conditions of employment based on her race and gender.

24.     MPD offered Plaintiff no recourse to address the disparate treatment from her leadership, and established a pattern of dismissing and ignoring concerns raised by Plaintiff.

<u>PLAINTIFF WAS DENIED A JOB OPPORTUNITY<br>BECAUSE OF HER RACE & GENDER</u>

25.     From 2001-2002, Plaintiff was detailed to the Harbor Patrol Branch of MPD during a recovery from knee surgery.

26.     Plaintiff did an excellent job while in that department, and the Harbor Master at the time Lt. Paul Niepling (hereinafter "Lt. Niepling"), requested that Plaintiff be permanently assigned to the Harbor Patrol Branch.

27.     Plaintiff asked her leadership for the permanent reassignment, but her request was denied. No explanation was given to Plaintiff for the denial of her request.

28.     Instead, a male officer was assigned to the Harbor Patrol Branch and Plaintiff was sent back to the Sixth District.

29.     Plaintiff asserts and alleges that she was denied a desirable job opportunity because of her race and gender, and that such denial had a continuing effect on her earnings and promotional opportunities.

### MPD'S SYSTEMATIC EFFORT TO DENY PLAINTIFF EARNED JOB OPPORTUNITIES IN DESIREABLE SPECIAL UNITS

30.     In 2002 Plaintiff attempted to expand her developmental and job opportunities by applying to be a helicopter pilot.

31.     Plaintiff took the swim test and was one of the only female police officers to pass the strenuous test.

32.     Plaintiff successfully passed all of the interview and testing components of the selection process, and was selected for the position, which was posted by teletype announcing Plaintiff as selected for the Air Support Unit.

33.     The departmental Sergeant, Steve Smith (hereinafter "Sgt. Smith), a white male, was unhappy that Plaintiff had been selected over a white male that Sgt. Smith favored, and accused Plaintiff, without evidence of any kind, of cheating on the swim test.

34.     The swim test portion was monitored by Lt. Niepling of Harbor Patrol, and several other supervisors were present.  None of the people who witnessed the test accused Plaintiff of any impropriety with respect to the swim test.

35.     While this dispute regarding assignment to the Air Support Branch was transpiring, in 2003, Plaintiff applied to be transferred to the Patrol K9 Unit and the EOD K-9 Unit, to have an opportunity to work with police dogs.

36.     Plaintiff was selected to take the EOD K-9 training test, but never received the notice to report to the Physical Training ("PT") part of the test.  Plaintiff later discovered that CDR William Dandridge (hereinafter "CDR Dandridge"), intentionally sabotaged Plaintiff getting the notification of the test in order to take from her the opportunity to go to the EOD K-9 unit.

37.     Plaintiff went directly to CDR Cathy Lanier, who was the Commander of Special Operations Department (hereinafter "SOD") at the time, to complain about what had happened, and was told that there was nothing that could be done, and that she should focus on patrol duties.

38.     No investigation or disciplinary action was taken against CDR Dandridge for sabotaging Plaintiff's opportunity by MPD management.  Plaintiff's concern and complaint was simply ignored.

39.     By chance, a few weeks later, one of Plaintiff's colleagues (not Plaintiff's supervisor or management team) informed her of the date and time of an upcoming PT test for the Patrol K-9 Unit.

40.     Plaintiff was the only female officer who was able to pass the PT portion of the K-9 test and advance to the interview portion for selection.

41.     Plaintiff, who had a side job as a dog groomer, received one of the highest scores during the interview portion because of her extensive knowledge of dogs, and held two certifications for dog grooming and handling.

42.     Despite her strong testing and performance, Sergeant Duane Beuthe (hereinafter "Sgt Beuthe")  interceded to keep Plaintiff from being transferred to the Patrol K-9 unit.  When asked about his objection to Plaintiff going to Patrol K-9 Unit, Sgt. Beuthe indicated that the work of the

Patrol K-9 Unit was too rigorous, and that Plaintiff would be better suited to the EOD K-9 unit because it did "less work."

43.     Plaintiff asserts that Sgt. Beuthe had a problem with female officers being in the K-9 Patrol unit, and acted to limit the job opportunities for women officer who wanted to work with police dogs.

44.     Plaintiff immediately complained about the unfair and disparate treatment that she was being subjected to, speaking with her union representative Bernard Richardson, to see if she had recourse under the terms of the collective bargaining agreement.  Plaintiff filed a grievance over the unfair treatment with the support of her union.

45.     Because Plaintiff was willing to escalate the matter and speak out against the gender bias within the K-9 Patrol Unit, she was labeled a "trouble-maker" and subjected to systematic and repetitive retaliation.

46.     Plaintiff, with the assistance of her union, again escalated matters to CDR Lanier explaining that she was being discriminated against in by both the Air Support Branch and the K-9 Units, because of her race and gender.

47.     In order to appease Plaintiff, and get her to drop her grievance, CDR Lanier agreed to give Plaintiff her choice of the Air Support Unit or the K-9 Unit. However, CDR Lanier discouraged Plaintiff from choosing the Air Support Unit by warning Plaintiff of the challenges of working for a sexist Sergeant.  CDR Lanier did not take any action to address Sgt. Smith or Sgt. Beuthe's discriminatory actions or attitudes.

48.     Plaintiff chose the K-9 Unit, but was denied K-9 Patrol, even though she had earned a position in that Unit, and settled for the EOD K-9 Unit. Plaintiff went to EOD K-9 Unit in 2003.

## PLAINTIFF'S FIRST EEO COMPLAINT OF DISCRIMIANTION

49.   In 2006, Plaintiff filed a District of Columbia Office of Human Rights complaint (hereinafter "OHR"), alleging gender discrimination, because, on an ongoing basis, she was treated less favorably than male officers in the SOD K-9 Unit.

50.   Plaintiff's complaint was not taken seriously, and was dismissed without thorough investigation.

51.   Immediately thereafter, Plaintiff was subjected to an even more hostile work environment, suffering from snide and sexist comments from her co-workers, and even more unfavorable treatment.

52.   Importantly, no disciplinary action was taken against Sgt. Smith or Sgt. Greg Jackson (hereinafter "Sgt. Jackson") for the blatantly sexist and discriminatory treatment of Plaintiff.

53.   No disciplinary action was taken against Sgt. Smith for maligning Plaintiff's character and defaming her by falsely accusing her of cheating on the Air Support swim test.

54.   In 2010, Plaintiff's position in the EOD K-9 Unit was unilaterally eliminated by management, and despite a still-pending union grievance on the matter, Plaintiff was transferred to the Special Events Branch in 2011.

## PLAINTIFF WAS REMOVED FROM A JOB
## SHE WAS DOING WELL IN FAVOR OF A WHITE MALE

55.   Plaintiff continued to suffer from retaliation and a hostile work environment while in Special Events Branch, but was afraid to file another EEO complaint because of the retaliation she suffered from the 2006 complaint.

56.     In 2014, at the request of CDR Steven Sund (hereinafter "Capt. Sund), Plaintiff was transferred to the Administrative Office.

57.     However, when CDR Sund retired, Captain Robert Glover (hereinafter "Capt. Glover") began taking steps to force Plaintiff out of the Administrative Department and replace her with a white male officer, Robert Wells (hereinafter "Officer Wells").

58.     Plaintiff successfully completed her job duties in the Administrative Department, without serious error or the need for substantial revision of her work, for three years.  Yet, the excuse that Capt. Glover gave for replacing Plaintiff with Officer Wells was that Officer Wells was "college educated."

59.     A college degree was never required for the position.

<u>PLAINTIFF CONTINUED TO BE SUBJECT TO
A BULLYING AND HOSTILE WORK ENVIRONMENT</u>

60.     Plaintiff was then transferred against her wishes to the Special Events/Escort Unit from the Administrative Department in 2016.

61.     Nevertheless, the hostile and unfair treatment aimed at Plaintiff continued.

62.     In 2019, Plaintiff filed an EEO complaint alleging unfair treatment, disparate terms and conditions of employment, and a hostile work environment.

63.     Because MPD's EEO Officer, Alphonso Lee (hereinafter "Mr. Lee"), had a practice of leaking what complainants said in EEO interviews, Plaintiff's accusations against Lt. Andrew Margiotta (hereinafter "Lt. Margiotta") and Captain Robert Glover (hereinafter Cpt. Glover), made it immediately back to them.

## PLAINTIFF SOUGHT THE INTERVENTION OF SENIOR MANAGEMENT

64.     Thereafter, the retaliation against Plaintiff began to escalate.  It increased so much that Plaintiff went directly to the Chief of Homeland Security Bureau (hereinafter "HSB"), Jeffrey Carroll (hereinafter "Chief Carroll") to complain.

65.     Chief Carroll dismissed and ignored Plaintiff's complaints, and took no action against either Sgt. James Rogers (hereinafter "Sgt. Rogers") or Lt. Margiotta, both white male officers, for their consistent and concerted efforts to bully Plaintiff, and undermine her ability to do her job.

66.     Plaintiff's supervisors routinely withheld vital information from her, gave her undesirable assignments that they would not give to others, issued discipline for small mistakes that were not subject to discipline when other officers made the same mistakes, and unfairly and harshly evaluated Plaintiff's performance.

67.     For example, Sgt. Rogers unilaterally revoked Plaintiff's "expected tardiness privilege," which is given to officers to allow them to manage their respective schedules, when necessary, without punishment.  Sgt. Rogers had absolutely no basis for doing so. Plaintiff had zero tardies during that period, so she had in no way abused the privilege.  The revocation was just an act of unnecessary and disparate harshness against Plaintiff.

68.     Plaintiff was systematically attacked, undermined, isolated, held to impossible standards, and unfairly disciplined, and when she complained to Mr. Lee, her complaints would go back to the people she was seeking EEO assistance to investigate and reign in.

69.     Plaintiff suffered such severe bullying and hostility at work that it impacted her mental health and caused extreme stress, anxiety and depression. Plaintiff was seen by the MPD physician,

but denied that she needed extended care because she feared it would be used as an excuse to terminate her employment.

70.     Plaintiff's fears were corroborated when the Director of the DC Fire and Police Clinic, Matthew Miranda, shared Plaintiff's private medical information with Mr. Lee without her consent, which was a violation of Plaintiff's HIPPA rights, and further chilled her willingness to seek assistance for her hostile work-environment-related stress and anxiety.

PLAINTIFF WAS THE VICTIM OF A FALSE ALLEGATION<br>AND RETALIATORY SUSPENSION

71.     On or about August 19, 2020, the Emergency Response Team (hereinafter "ERT") Sergeant, Michael Boyd (hereinafter "Sgt. Boyd"), who is higher ranking than Plaintiff, got into a confrontation with Plaintiff during roll call.  He then filed an EEO complaint against Plaintiff for creating a hostile work environment for him.

72.     At the time, Sgt. Boyd had already been the subject of several EEO complaints from several difference female officers.

73.     Sgt. Boyd filed his EEO Complaint against Plaintiff as an act of aggression and retaliation.

74.     Unlike Plaintiff's EEO Complaints, Sgt. Boyd's complaint was immediately investigated, and Plaintiff was threatened with a 30-day suspension.

75.     The EEO Officer, Mr. Harry Carter (hereinafter "Mr. Carter") who conducted the investigation and interviewed the witnesses to the incident, concluded that Sgt. Boyd was the one at fault, and dismissed the complaint.

76.     Mr. Lee then interceded, demanding that Mr. Carter alter his findings, and eventually fired Mr. Carter for refusing to issue discipline against Plaintiff, in defiance of Mr. Lee's unlawful demand that Mr. Carter do so.

77.     Although Plaintiff narrowly escaped discipline for her role in the incident, she was unable to get any MPD management to take her allegations against Sgt. Boyd seriously, and he was no disciplined for his act of bad faith bullying and retaliation.

MPD MISLEAD, AND IN BAD FAITH,
TRICKED PLAINTIFF INTO VOLUNTARILY
TRANSFERRING OUT OF HER DEPARTEMNT

78.     Because MPD refused to take action against male officers who bullied Plaintiff, the retaliatory and hostile behavior continued. In February of 2020, Plaintiff went to her CDR Guillermo Riveira (hereinafter "CDR Rivera"), the new commander of SOD, with a recording of a confrontation between herself and Lt. Margiotta.  However, CDR Rivers refused to even listen to the recording, and again dismissed Plaintiff's concerns.

79.     Despite the fact that Plaintiff's recording of the incident proved that Lt. Margiotta lied during an investigation by Internal Affairs, MPD management disciplined Plaintiff and ***suspended her*** for twenty-five (25) days for having recorded the incident.

80.     Recording incidents is not unlawful in the District of Columbia, and does not require the consent of the person recorded to be lawful.

81.     Plaintiff was reduced to having to record the hostile work environment she was dealing with because neither MPD EEO, nor any of her chain of command would take her complaints seriously or believe her.

82.     On Plaintiff's behalf, the Union appealed the suspension and went directly to the Chief of Police, Robert Contee (hereinafter "Chief Contee") to obtain redress for the injustice visited on Plaintiff.

83.     Plaintiff also appealed directly to Chief Contee about the racism, sexism, hostile work environment, and retaliation that she was enduring on the job.

84.     In a ruse to get Plaintiff to voluntarily leave the SOD department, in lieu of having to involuntarily transfer her out, which could and would have been appealed, SOD management entered into an agreement with Plaintiff that if she voluntarily transferred, they would rescind the disciplinary suspension for the recording.

85.     Plaintiff had no desire to transfer into yet another department, but felt that she had no real choice, and did not want a long suspension on her record for an incident in which she was not at fault.

86.     Plaintiff therefore signed the agreement, and was transferred out of SOD.

87.     MPD then reneged on the agreement and ***suspended Plaintiff anyway***, demonstrating how unfair, biased, and unjust it was willing to be to Black women officers.

88.     Plaintiff has since returned to work, but lives in constant fear and stress of the retaliation, discrimination and unfair treatment she continues to be subject to at the MPD.

## CAUSES OF ACTION

**Claims Under Title VII of the Civil Rights Act of 1964, as amended,
42 U.S.C. § 2000e, *et seq.* and Under the District of Columbia Human Rights Act
District of Columbia Code § 2-1401.01 *et seq.*
(Employment Discrimination on the Basis of Race)**

### COUNT I – Disparate Treatment on the Basis of Race

89.    Plaintiff restates and incorporates all information and allegations contained in the preceding paragraphs as if fully set forth herein.

90.    Plaintiff is African American, and as such, is a member of a protected class.

91.    Plaintiff was treated differently and subjected to disparate and more harsh treatment in comparison to similarly situated non-African American police officers.

92.    Plaintiff was disciplined for minor violations for which other non-African American Officers were not disciplined.

93.    Plaintiff was given consistently undesirable assignments, rather than such assignments being spread equitably across her unit, and was chosen for those undesirable assignments on the basis of her race.

94.    Plaintiff was denied job and promotional opportunities that she was qualified for and had earned because of her race.

95.    Plaintiff's legitimate concerns were regularly ignored and dismissed  The disregard of her concerns, and the punishment handed down to her were fundamentally unjust, and were given to Plaintiff because of her race.

96.    Plaintiff's performance evaluations were based on false and illegitimate disciplinary actions and were pretext to discriminate against Plaintiff on the basis of race.

97.    Plaintiff was treated differently and subjected to different and more harsh terms and conditions of her employment due to her race.

15

98.     Similarly situated officers who were not Black, have been treated more favorably than Plaintiff in the terms and conditions of employment.

99.     Defendant's conduct has been intentional, deliberate, willful, malicious, reckless and in callous disregard of the rights of Plaintiff because of her race.

100.    As a direct and proximate cause of Defendant's conduct, Plaintiff suffered, and continues to suffer mental and physical injury, and monetary damages – including but not limited to past and future loss of income, benefits, career opportunities, and expenses, and costs – and is entitled to all available legal and equitable remedies.

101.    Plaintiff was humiliated, embarrassed and made to endure constant stress and anxiety, depression, lack of sleep and other symptoms that required her to seek professional treatment, and that materially caused her severe mental anguish.

102.    Plaintiff has incurred lost wages, loss of reputation and loss of career opportunity now and into the future, and all the other losses stated herein.

103.    Plaintiff herein seeks compensatory and punitive money damages, and damages for mental pain and suffering of not less than $250,000, plus interest, costs, fees and all other remedies the Court deems appropriate.

### COUNT II – Hostile Work Environment on the Basis of Race

104.    Plaintiff incorporates and restates all information and allegations contained in the preceding paragraphs as if fully set forth herein.

105.    Defendant has fostered and permitted to flourish a work climate and culture that is hostile to officers who are African American.

106.    Defendant's EEO Director, Alphonso Lee, either directed or permitted, confidential statements made by Plaintiff when she went to the EEO department to complain of racial discrimination, to be leaked to Plaintiff's co-workers and supervisors.

107.    Defendant permitted or encouraged these leaks for the express purpose of turning Plaintiff's co-workers against her, and to treat her with contempt and disdain, because of her race.

108.    Defendant nurtured and tolerated a work environment in which negative comments and disparate treatment of African American officers was tolerated and accepted.

109.    Defendant subjected Plaintiff to constant denigrating comments, overly harsh discipline for picayune transgressions that other non-African American officers were not disciplined for, repeated relegation to undesirable assignments, repeated denials of job and promotional opportunities, repeated disregard for Plaintiff's physical safety and well-being, and false and inaccurate evaluation of her performance, such pattern creating a hostile work environment for Plaintiff on the basis of her race.

110.    As a direct and proximate cause of the hostile work environment fostered by Defendant, Plaintiff was humiliated, embarrassed and made to endure constant stress and anxiety, depression, lack of sleep and other symptoms that required her to seek professional treatment, and that materially caused her severe mental anguish.

111.    Plaintiff herein seeks compensatory and punitive money damages, and damages for mental pain and suffering of not less than $250,000, plus interest, costs, fees and all other remedies the Court deems appropriate.

## COUNT III – Retaliation for Complaining of Race Discrimination

112.    Plaintiff incorporates and restates all information and allegations contained in the preceding paragraphs as if fully set forth herein.

113.    As outlined in the facts above, on several occasions Plaintiff went to Defendant's EEO Office to complain of being discriminated against on the basis of her race.

114.    As outlined in the facts above, Plaintiff sought out and spoke with senior management and leaders of the SPO Department to complain about the racial discrimination and disparate treatment directed at her.   After her complaint, the discriminatory treatment against her escalated, in retaliation for engagement in statutorily protected activity.

115.    Plaintiff went to the Chief of Police and others to complain about the hostile work environment, disparate treatment, and retaliatory discipline she was being subject to because of her race, such communication constituting a protected activity.

116.    Plaintiff filed a formal EEOC charge alleging race discrimination against the MPD.  In doing so, Plaintiff engaged in statutorily protected activity.

117.    Plaintiff was humiliated, embarrassed and made to endure constant stress and anxiety, depression, lack of sleep and other symptoms that required her to seek professional treatment, and that materially caused her severe mental anguish.

118.    Plaintiff has incurred lost wages, loss of reputation and loss of career opportunity now and into the future, and all the other losses stated herein.

119.    Plaintiff herein seeks compensatory and punitive money damages, and damages for mental pain and suffering of not less than $250,000, plus interest, costs, fees and all other remedies the Court deems appropriate.

**Claims Under Title VII of the Civil Rights Act of 1964, as amended,
42 U.S.C. § 2000e, *et seq.* and Under the District of Columbia Human Rights Act
District of Columbia Code § 2-1401.01 *et seq.*
(Employment Discrimination on the Basis of Sex)**

**COUNT IV – Disparate Treatment on the Basis of Sex (Female)**

120.   Plaintiff restates and incorporates all information and allegations contained in the preceding paragraphs as if fully set forth herein.

121.   Plaintiff is a woman, and as such, is a member of a protected class.

122.   Plaintiff was treated differently and subjected to disparate and more harsh treatment in comparison to similarly situated male police officers.

123.   Plaintiff was disciplined for minor violations for which male officers were not disciplined.

124.   Plaintiff was given consistently undesirable assignments, rather than such assignments being spread equitably across her unit, and was chosen for those undesirable assignments on the basis of her sex.

125.   The disregard of Plaintiff's complaints and concerns, and the punishment handed down to her for minor transgressions was fundamentally unjust and was given to Plaintiff because of her sex.

126.   Plaintiff's performance evaluations were based on false and illegitimate disciplinary actions and were pretext to discriminate against Plaintiff on the basis of sex.
of her performance as a pretext for its discrimination against her on the basis of her sex.

127.   Plaintiff was treated differently and subjected to different and more harsh terms and conditions of her employment due to her sex.

128.   Similarly situated male officers, have been treated more favorably than Plaintiff with respect to terms and conditions of employment.

129.    Defendant's conduct has been intentional, deliberate, willful, malicious, reckless and in callous disregard of the rights of Plaintiff because of her sex.

130.    As a direct and proximate cause of Defendant's conduct alleged in this Complaint, Plaintiff suffered, and continues to suffer mental and physical injury, and monetary damages – including but not limited to past and future loss of income, benefits, career opportunities, expenses, and costs – and is entitled to all available legal and equitable remedies.

131.    Plaintiff was humiliated, embarrassed and made to endure constant stress and anxiety, depression, lack of sleep and other symptoms that required her to seek professional treatment, and that materially caused her severe mental anguish.

132.    Plaintiff has incurred lost wages, loss of reputation and loss of career opportunity now and into the future, and all the other losses stated herein.

133.    Plaintiff herein seeks compensatory and punitive money damages, and damages for mental pain and suffering of not less than $250,000, plus interest, costs, fees and all other remedies the Court deems appropriate.

**COUNT V – Hostile Work Environment on the Basis of Sex**

134.    Plaintiff incorporates and restates all information and allegations contained in the preceding paragraphs as if fully set forth herein.

135.    Defendant has fostered and permitted to flourish a work climate and culture that is hostile to female officers.

136.    Defendant's EEO Director, Alphonso Lee, either directed or permitted, confidential statements made by Plaintiff when she went to the EEO department to complain of sex discrimination, to be leaked to Plaintiff's co-workers and supervisors.

137.    Defendant permitted or encouraged these leaks for the express purpose of turning Plaintiff's co-workers against her, and to treat her with contempt and disdain, because of her sex.

138.    Defendant nurtured and tolerated a work environment in which negative comments and disparate treatment of female officers was tolerated and accepted.

139.    Defendant subjected Plaintiff to constant denigrating comments, overly harsh discipline for picayune transgressions that male officers were not disciplined for, repeated relegation to undesirable assignments, repeated denial of job and promotional opportunities, repeated disregard for Plaintiff's physical safety and well-being, and false and inaccurate evaluation of her performance, such pattern creating a hostile work environment for Plaintiff on the basis of her sex.

140.    As a direct and proximate cause of the hostile work environment fostered by Defendant, Plaintiff was humiliated, embarrassed and made to endure constant stress and anxiety, depression, lack of sleep and other symptoms that required her to seek professional treatment, and that materially caused her severe mental anguish.

141.    Plaintiff herein seeks compensatory and punitive money damages, and damages for mental pain and suffering of not less than $250,000, plus interest, costs, fees and all other remedies the Court deems appropriate.

**COUNT VI – Retaliation for Complaining of Sex Discrimination**

142.    Plaintiff incorporates and restates all information and allegations contained in the preceding paragraphs as if fully set forth herein.

143.    As outlined in the facts above, Plaintiff went to Defendant's EEO Office to complain of being discriminated against on the basis of her sex. The EEO Director leaked her comments to others to isolate Plaintiff and invite retaliation against her.

144.    As outlined in the facts above, Plaintiff sought out and spoke with senior management and leaders of the SOP Department to complain about the sex discrimination and disparate treatment directed at her.   After her complaint, the discriminatory treatment against her escalated, in retaliation for engagement in statutorily protected activity.

145.    Plaintiff went to the Chief of Police and others to complain about the hostile work environment, disparate treatment, and retaliatory discipline she was being subject to because of her sex, such communication constituting a statutorily protected activity.

146.    Plaintiff filed a formal EEOC charge alleging sex discrimination against the MPD.   In doing so, Plaintiff engaged in statutorily protected activity.

147.    In response to this statutorily protected activity, Plaintiff was wrongfully disciplined for something that is not unlawful, was lied to in order to persuade her to voluntarily leave her department, and then was suspended anyway, despite the agreement she entered into.

148.    Plaintiff was humiliated, embarrassed and made to endure constant stress and anxiety, depression, lack of sleep and other symptoms that required her to seek professional treatment, and that materially caused her severe mental anguish.

149.    Plaintiff has incurred lost wages, loss of reputation and loss of career opportunity now and into the future, and all the other losses stated herein.

150.    Plaintiff herein seeks compensatory and punitive money damages, and damages for mental pain and suffering of not less than $250,000, plus interest, costs, fees and all other remedies the Court deems appropriate.

**Claims Under the Civil Rights Act of 1866
Discrimination Based on Race in the Makin and Enforcing of Contracts
42 U.S.C. §1981(a) by way of, through and via 42 U.S.C. § 1983**

**COUNT VII – Disparate Treatment on the Basis of Race**

151.    Plaintiff restates and incorporates all information and allegations contained in the preceding paragraphs as if fully set forth herein.

152.    Plaintiff is African American, and as such, is a member of a protected class.

153.    Plaintiff was treated differently and subjected to disparate and more harsh treatment in comparison to similarly situated non-African American police officers.

154.    Plaintiff was disciplined for minor violations for which other non-African American officers were not disciplined.

155.    Plaintiff was given consistently undesirable assignments, rather than such assignments being spread equitably across her unit, and was chosen for those undesirable assignments on the basis of her race.

156.    Plaintiff was systematically denied job opportunities and promotional opportunities because of her race.

157.    Plaintiff's performance evaluations were based on false and illegitimate disciplinary actions and were pretext to discriminate against Plaintiff on the basis of race.

158.    Plaintiff was treated differently and subjected to different and more harsh terms and conditions of her employment due to her race.

159.    Similarly situated officers who were not black, have been treated more favorably than Plaintiff in the terms and conditions of employment.

160.    Defendant's conduct has been intentional, deliberate, willful, malicious, reckless and in callous disregard of the rights of Plaintiff because of her race.

161.    As a direct and proximate cause of Defendant's conduct alleged in this Complaint, Plaintiff suffered, and continues to suffer mental and physical injury, and monetary damages – including but not limited to past and future loss of income, benefits, career opportunities, expenses, and costs – and is entitled to all available legal and equitable remedies.

162.    Plaintiff was humiliated, embarrassed and made to endure constant stress and anxiety, depression, lack of sleep and other symptoms that required her to seek professional treatment, and that materially caused her severe mental anguish.

163.    Plaintiff has incurred lost wages, loss of reputation and loss of career opportunity now and into the future, and all the other losses stated herein.

164.    Plaintiff herein seeks compensatory and punitive money damages, and damages for mental pain and suffering of not less than $250,000, plus interest, costs, fees and all other remedies the Court deems appropriate.

## COUNT VIII – Hostile Work Environment on the Basis of Race

165.    Plaintiff incorporates and restates all information and allegations contained in the preceding paragraphs as if fully set forth herein.

166.    Defendant has fostered and permitted to flourish a work climate and culture that is hostile to officers who are African American.

167.    Defendant's EEO Director, Alphonso Lee, either directed or permitted, confidential statements made by Plaintiff when she went to the EEO department to complain of racial discrimination, to be leaked to Plaintiff's co-workers and supervisors.

168.    Defendant permitted or encouraged these leaks for the express purpose of turning Plaintiff's co-workers against her, and to treat her with contempt and disdain, because of her race.

169.    Defendant nurtured and tolerated a work environment in which negative comments and disparate treatment of African American Officers was tolerated and accepted.

170.    Defendant subjected Plaintiff to constant denigrating comments, overly harsh discipline for picayune transgressions that other non-African American officers were not disciplined for, repeated relegation to undesirable assignments, repeated disregard for Plaintiff's physical safety and well-being, and false and inaccurate evaluation of her performance, such pattern creating a hostile work environment for Plaintiff on the basis of her race.

171.    As a direct and proximate cause of the hostile work environment fostered by Defendant, Plaintiff was humiliated, embarrassed and made to endure constant stress and anxiety, depression, lack of sleep and other symptoms that required her to seek professional treatment, and that materially caused her severe mental anguish.

172.    Plaintiff herein seeks compensatory and punitive money damages, and damages for mental pain and suffering of not less than $250,000, plus interest, costs, fees and all other remedies the Court deems appropriate.

**COUNT IX – Retaliation for Complaining of Race Discrimination**

173.    Plaintiff incorporates and restates all information and allegations contained in the preceding paragraphs as if fully set forth herein.

174.    As outlined in the facts above, Plaintiff went to Defendant's EEO Office to complain of being discriminated against on the basis of her race.  Instead of taking her complaints seriously, the EEO Director leaked her statements to her colleagues in order to isolate her and invite retaliation and bullying of Plaintiff.

175.    As outlined in the facts above, Plaintiff sought out and spoke with senior management and leaders of the SOP Department to complain about the racial discrimination and disparate treatment

directed at her.  After her complaint, the discriminatory treatment against her escalated, in retaliation for engagement in statutorily protected activity.

176.    Plaintiff went to the Chief of Police and others to complain about the hostile work environment, disparate treatment, and retaliatory discipline she was being subject to because of her race, such communication constituting a protected activity.

177.    Plaintiff filed a formal EEOC charge alleging race discrimination against the MPD.  In doing so, Plaintiff engaged in statutorily protected activity.

178.    In response to Plaintiff's protected activity, Defendant engaged in a campaign to isolate and intimidate her, and disciplined her unfairly and in violation of agreement with Plaintiff.

179.    Plaintiff was humiliated, embarrassed and made to endure constant stress and anxiety, depression, lack of sleep and other symptoms that required her to seek professional treatment, and that materially caused her severe mental anguish.

180.    Plaintiff has incurred lost wages, loss of reputation and loss of career opportunity now and into the future, and all the other losses stated herein.

181.    Plaintiff herein seeks compensatory and punitive money damages, and damages for mental pain and suffering of not less than $250,000, plus interest, costs, fees and all other remedies the Court deems appropriate.

### Claims Under the District of Columbia
### Whistleblower Protection Act
### D.C. Code § 1-615-51 *et seq.*

### COUNT XII -- Whistleblower Retaliation

182.    Plaintiff incorporates and restates all information and allegations contained in the preceding paragraphs as if fully set forth herein.

183.   Pursuant to the D.C. Whistleblower Protection Act, Defendants are prohibited from reassigning, terminating or otherwise retaliating against a D.C. government employee as a result of that employee's protected disclosures that the employee reasonably believes show gross mismanagement, gross misuse or waste of government resources, and abuse of authority in the connection with the administration of a government program, or a violation of a state, local or federal law, rule or regulation.

184.   Plaintiff is an employee who, as a result of her disclosures to her supervisors, the senior leadership of her department, and to the EEOC, revealed systemic discrimination in the MPD, and the complicity of the MPD EEO Department in perpetuating it and protecting those who engage in it, ethical violations that included leaking confidential witness statements, the creation of a chilling and retaliatory work culture that discouraged officers from complaining about mistreatment and inappropriate police conduct, enjoyed the protection of DCWPA.

185.   As a direct result of Plaintiff's protected disclosures, Defendants gradually, and continuously, retaliated against Plaintiff, including but not limited to unwarranted disciplinary actions against Plaintiff, isolation and separation from coworkers, unfavorable treatment and assignments, false and inaccurate performance evaluation, and harsh and unwarranted discipline.

186.   As a result of Defendants' actions, Plaintiff suffered significant economic harm in the form of loss of employment, corresponding salary, loss of employment opportunities, damage to her professional reputation, and significant mental and emotional distress.

187.   Plaintiff was humiliated, embarrassed and made to endure constant stress and anxiety, depression, lack of sleep and other symptoms that required her to seek professional treatment, and that materially caused her severe mental anguish.

188.    Plaintiff has incurred lost wages, loss of reputation and loss of career opportunity now and into the future, and all the other losses stated herein.

189.    Plaintiff herein seeks compensatory and punitive money damages, and damages for mental pain and suffering of not less than $250,000, plus interest, costs, fees and all other remedies the Court deems appropriate.

## **PRAYER FOR RELIEF**

**WHEREFORE,** Plaintiff respectfully prays that this Honorable Court:

a.  Provide Plaintiff with applicable backpay, lost wages due to wrongfully denied job opportunities and an unfair failure to promote, benefits and interest;

b.  Provide Plaintiff with a clean record devoid of any adverse/negative personnel actions/records, including all adverse/negative performance appraisals, disciplinary records, and substitute accurate agency records on the Plaintiff;

c.  Reimburse Plaintiff for all sick leave she was forced to use due to the Defendant's discrimination and retaliation;

d.  Award Plaintiff past pecuniary compensatory damages in their proven amount;

e.  Award Plaintiff future pecuniary and nonpecuniary compensatory damages in a proven amount not to exceed lawful amounts provided by law.

f.  Award Plaintiff punitive damages as decided by the Court;

g.  Award Plaintiff reasonable attorney's fees and costs;

h.  Award such other and further relief as this Honorable Court deems just and proper.

## EQUITABLE RELIEF

190.    Plaintiff hereby incorporates by reference hereto, the facts, law, and/or allegations contained within the preceding paragraphs, as fully set forth herein.

191.    Because of the actions alleged herein, the continued employment of the supervisors at issue herein without training in equal employment opportunity law, rules, and regulations, present a clear and present danger to the employees of Defendant and could result in further illegal actions on the part of Defendant, by and through their respective agents, servants, and employees.

**WHEREFORE**, Plaintiff respectfully prays that this Honorable Court:

a.  Order Defendant to institute a policy and procedure to be implemented against discrimination, retaliation, and hostile work environments.

b.  Equal Employment Opportunity training for Defendant and the supervisory officials at issue herein.

c.  Supervisory training for the supervisors at issue herein; and

d.  Such other and further relief as this Court deems just and proper.

## JURY DEMAND

Pursuant to Fed. R. Civ. P. 38, Plaintiff demands a trial by jury on all issues so triable.

Respectfully submitted,

*/s/ Donald M. Temple*
Donald M. Temple, Esq.
Pamela M. Keith, Esq.
Temple Law Offices
1310 L St. NW, Suite 750
Washington, DC 20005
Dtemplelaw@gmail.com
pamkeithtemplelaw@gmail.com
202-628-1101 (o)
202-302-0383 (m)
*Counsel for Plaintiff*